IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-01842-EWN-MEH

MONSEL DUNGEN,

      Applicant,

vs.

AL ESTEP, Warden, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

_____

**RECOMMENDATION FOR
DISMISSAL OF APPLICATION**
_____

**Entered by Michael E. Hegarty, United States Magistrate Judge**

      Applicant has pending before this Court an Application for a Writ of Habeas Corpus Pursuant

to 28 U.S.C. § 2254 ("Application") (Docket #3).  Pursuant to the Court's Order to Answer (Docket

#9), Respondents have filed their Answer (Docket #13), together with their Exhibits: State Court

Record to Answer to Application for Writ of Habeas Corpus (Docket #14).   Under the provisions

of 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1, this matter has been referred to me for

Recommendation on dispositive matters and for ruling on nondispositive matters.  Based on the

record contained herein, I **recommend** that the Application be denied and that this matter be

dismissed, with prejudice.

      The parties are advised that they shall have ten (10) days after service hereof to serve and file

any written objections in order to obtain reconsideration by the District Judge to whom this case is

assigned.  FED. R. CIV. P. 72.  The party filing objections must specifically identify those findings or

recommendations to which the objections are being made.  The District Court need not consider

frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

## FACTS

Applicant is a state prisoner in Colorado.  He has filed a *pro se* Application challenging his 1991 Colorado conviction for first degree murder, second degree burglary, aggravated robbery, and first degree motor vehicle theft.  Applicant filed a direct appeal of his conviction to the Colorado Court of Appeals, but his conviction was upheld on appeal, and the Colorado Supreme Court denied certiorari.

Thereafter, the Applicant made three postconviction attempts in the state courts to obtain relief from his conviction, but each was unsuccessful.  In September 2005, the Applicant filed his Application in this Court, seeking federal habeas relief.  Applicant asserts eight claims for relief, including two with multiple subparts, which the Respondents have identified and Applicant has not disputed[1] are as follows:

---

[1]Pursuant to 28 U.S.C. § 2248, because the Applicant did not challenge the characterization of his claims in his traverse, and based upon the material set forth in the Application, the characterization by the Respondents is accepted as correct.

2

**Claim One**: State suppression of exculpatory evidence violated the Applicant's rights under the Fifth, Sixth, and Fourteenth Amendments of the federal constitution.

**Claim Two**: Racial discrimination is (sic) the jury selection process violated the Applicant's rights under the Fifth, Sixth, and Fourteenth Amendments of the federal constitution.

**Claim Three**: [Ten instances of] prosecutorial misconduct violated the Applicant's rights under the Fifth, Sixth, and Fourteenth Amendments of the federal constitution.

**Claim Four**: Judicial misconduct violated the Applicant's rights under the Fifth, Sixth, and Fourteenth Amendments of the federal constitution.

**Claim Five**: [Seven instances of] ineffective assistance of trial counsel violated the Applicant's rights under the Fifth, Sixth, and Fourteenth Amendments of the federal constitution.

**Claim Six**: An unlawful, stop, search, and seizure [violated] Applicant's rights under the Fifth, Sixth, and Fourteenth Amendments of the federal constitution.

**Claim Seven**: Hearsay statements made by a police witness at the trial [violated] Applicant's rights under the Fifth, Sixth, and Fourteenth Amendments of the federal constitution.

**Claim Eight**: The summaries of the decisions by the Colorado Court of Appeals [violated] Applicant's rights under the Fifth, Sixth, and Fourteenth Amendments of the federal constitution.

ANSWER TO FEDERAL HABEAS APPLICATION, Docket #13, pp. 7-8.

In their Answer to the allegations made in the Application, the Respondents argue that the Application is untimely filed under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), and that Applicant has not exhausted state court remedies with regard to his claims. Respondents contend that the federal exhaustion requirements have not been satisfied with regard to Claims One and Five, only partially satisfied on Claim Seven, and also that two of the subclaims of Claim Three have not been exhausted, because these matters were never properly presented on appeal to the

highest state court.  Based on state procedural bars which would prevent the Applicant from filing those claims now, there is no available state court remedy and therefore, the claims are technically exhausted, but this Court is precluded from their review on the merits.  Further, the Respondents argue that all exhausted claims lack merit.

Applicant proceeds in this action *pro se*.  As a *pro se* litigant, Applicant's filings are entitled to liberal construction by this Court.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be the *pro se* litigant's advocate.  *Hall*, 935 F.2d at 1110.

## DISCUSSION

### I.     Statute of Limitations.

The AEDPA establishes a one-year statute of limitations for habeas corpus applications filed by state prisoners.  *See* 28 U.S.C. § 2244(d)(1).  If a prisoner's conviction became final before April 24, 1996 (the effective date of the AEDPA), the one-year limitations period is deemed to have commenced on April 24, 1996.  *See Hoggro v. Boone*, 150 F.3d 1223, 1225 (10th Cir. 1998).  Accordingly, a prisoner in this situation is given  until April 24, 1997 (one year after the AEDPA's effective date) to file his Application.  *See United States v. Hurst*, 322 F.3d 1256, 1260-61 (10th Cir. 2003) (prisoners whose convictions became final on or before April 24, 1996, must file their habeas corpus applications on or before April 24, 1997, in order to avoid the AEDPA's statute of limitations).  This one-year limitations period is, however, tolled during the time in which a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]"  28 U.S.C. § 2244(d)(2).  "State procedural law must govern when

determining whether a state petition is 'properly filed.'" *Adams v. LeMaster*, 223 F.3d 1177, 1181 (10th Cir. 2000), *cert. denied*, 531 U.S. 1195 (2001).

The record is undisputed that Applicant's conviction became final prior to the effective date of the AEDPA. Therefore, the limitations period for the Applicant to file a federal habeas application began to run as of April 24, 1996. Respondents argue that although the Applicant made three separate postconviction attempts in the state courts, the time the postconviction proceedings were pending did not sufficiently toll the one-year statute of limitations. Respondents calculate that the Applicant was 113 days late in filing this action, and therefore, it should be denied as untimely. However, the time line utilized by the Respondents is inaccurate. The chart compiled by the Respondents in this regard indicates that the Colorado Supreme Court denied review of the third postconviction action on May 5, 2005, *see* ANSWER TO FEDERAL HABEAS APPLICATION, Docket #13, p. 6, when certiorari was actually denied on August 22, 2005, *see* EXHIBITS: STATE COURT RECORD TO ANSWER TO APPLICATION FOR WRIT OF HABEAS CORPUS ("EXHIBITS"), Docket #14, Exh. Z. Recalculating the periods of time during which Applicant's state postconviction proceedings tolled the statute of limitations based upon information contained in the record, the following is demonstrated:

1. April 24, 1996 thru December 14, 1998: Limitations period tolled during pendency of first state postconviction proceedings.

2. December 15, 1998: Limitations period begins to expire.

3. June 14, 1999 thru December 9, 2002: Limitations period is tolled during pendency of second postconviction proceedings.

4. December 10, 2002: Limitations period again beings to expire.

5.      May 20, 2003 thru August 22, 2005: Limitations period is tolled during pendency of third postconviction proceedings.

6.      August 23, 2005: Limitations period again beings to expire.

7.      September 9, 2005: Federal habeas action is begun.[2]

Accordingly, the record reflects a total of 360 days of the limitations period had expired prior to the Applicant's filing of his Application in this Court.   Therefore, the Application in this case was filed within the one-year limitations period and is not time-barred.

**II.     Procedural Bar.**

Exhaustion of available and adequate state court remedies is a prerequisite to a habeas corpus applications in federal court. *Granberry v. Greer*, 481 U.S. 129 (1987); *Rose v. Lundy*, 455 U.S. 509 (1982); 28 U.S.C. § 2254(b).   State remedies are not deemed exhausted until the highest state appellate courts have had an opportunity to consider the merits of the claim which an applicant seeks to present in federal court.  *See Pitchess v. Davis*, 421 U.S. 482 (1975); *Qureshi v. Diesslin*, 654 F. Supp. 555 (D. Colo. 1987).   For the purpose of the exhaustion requirement, a federal constitutional claim is not fairly presented to a state court by the mere citation of a constitutional principle.  *See, e.g., Qureshi*, 654 F. Supp. at 557.   With regard to Applicant's Claims One and Five, part of Claim Seven, and two of the subclaims of Claim Three, the Respondents argue that the claims have not been properly presented to the state courts either on direct or postconviction appeal and are therefore

_____

[2] It appears from the record that the Application in this case was signed and dated by the Applicant on September 9, 2005.  *See* APPLICATION, Docket #3.  Accordingly, this action can be deemed commenced on September 9, 2005, pursuant to the prisoner mailbox rule.  *See Houston v. Lack*, 487 U.S. 266, 270-76 (1988); *see, also, Davis v. Ortiz*, Civil Action No. 02-N-2275, Docket #4 (D.Colo. 2002) (applying prisoner mailbox rule in connection with filing of § 2254 application).

procedurally defaulted.  Applicant does not dispute this fact.  *See* TRAVERSE TO ANSWER, Docket #15, p. 19.

If a habeas applicant has failed to raise a claim properly in the state courts, and no state judicial remedies are available to adjudicate the claim at the time the federal habeas application is filed, the applicant meets the technical requirements for exhaustion because no state remedies are available.  *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  In this regard, the Applicant pursued a direct appeal of his convictions through the Colorado Court of Appeals, and his Petition for Certiorari was denied by the Colorado Supreme Court.  He may not file a second direct appeal of his conviction.  Second, Colorado's successive petition rule prevents the Applicant from raising new  issues in a second Rule 35(c) motion.  *See People v. Hubbard*, 519 P.2d 945, 948-49 (1974) (successive application rule).  Further, the period of limitations for a Rule 35(c) motion has expired. COLO. REV. STAT. § 16-5-402(1) (period of limitations for Rule 35(c) motions). Therefore, because Colorado's procedural rules now bar the Applicant from again appealing claims he has previously raised, and from raising new claims related to the criminal conviction at issue here, the claims are technically exhausted, but procedurally barred from review in these federal habeas proceedings.  *Coleman*, 501 U.S. at 729-30.

Applicant does argue that his "actual innocence" should excuse his failure to exhaust these claims.  To make such a showing, Applicant must demonstrate that a constitutional error has probably resulted in the conviction of one who is actually innocent.  *See Bousley v. United States*, 523 U.S. 614, 623 (1998).  The definition of "actual innocence," taken from its common usage as an exception to the rule of procedural bar, requires a showing that there is new evidence, not presented previously, that makes it "more likely than not that no reasonable juror" would have convicted the applicant.  *See*

*Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see also Sellers v. Ward*, 135 F.3d 1333, 1338 (10th Cir. 1998). Applicant, however, has presented no new evidence supporting his alleged actual innocence. His allegation of actual innocence is based on the same arguments presented and rejected in the state courts. Therefore, no excuse for his failure to exhaust is presented under this argument.

Additionally, the Applicant also appears to argue that default should be excused because of ineffective assistance of post conviction counsel in failing to raise such claims. However, there is no constitutional right to counsel in collateral proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *People v. Alexander*, 129 P.3d 1051, 1056 (Colo.Ct.App. 2005) (there is no federal or state constitutional right to counsel in postconviction proceedings). Therefore, a failure of post-conviction counsel resulting in procedural default "cannot constitute cause to excuse default in federal habeas." *Coleman*, 501 U.S. at 757. Accordingly, Applicant has procedurally defaulted Claims One and Five, the allegations under Claim Seven of a violation of his right to confrontation and right to be presumed innocent, and two of the subclaims of Claim Three[3], and the default cannot be excused. Accordingly, this Court cannot reach the merits of these claims, and they must be dismissed.

## III.   Remaining Claims.

### A.   Standard of Review.

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

---

[3]The two defaulted subclaims are: (1) that a model of the alleged murder weapon was shown to two witnesses outside the courtroom by the prosecution, and thereafter, the witnesses changed their testimony, and (2) that the prosecution vouched to the truthfulness that the Applicant's family was the reason why a murder weapon was never found in the criminal case.

"When a federal district court reviews a state prisoner's habeas [application] pursuant to 28 U.S.C. § 2254 it must decide whether the [applicant] is 'in custody in violation of the Constitution or laws or treaties of the United States.' The court does not review a judgment, but the lawfulness of the [applicant's] custody *simpliciter*." *Coleman*, 501 U.S. at 730. The exhaustion of state remedies requirement in federal habeas cases dictates that a state prisoner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Accordingly, based on denial of certiorari review by the Colorado Supreme Court in each of the three postconviction attempts made by the Applicant, habeas review in this Court is concerned with the proceedings in the Colorado Court of Appeals, which was the final substantive proceedings in the state appellate review process.

As noted previously, the AEDPA applies to all federal habeas applications filed after the AEDPA's effective date of April 24, 1996, regardless of when the state proceedings occurred. *See Trice v. Ward*, 196 F.3d 1151, 1158 (10th Cir. 1999); *Moore v. Gibson*, 195 F.3d 1152, 1163 (10th Cir. 1999). Under AEDPA, an applicant is entitled to federal habeas relief only if he can establish that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see also Hale v. Gibson*, 227 F.3d 1298, 1309 (10th Cir. 2000).

As the Supreme Court has stated:

> A state-court decision is contrary to . . . clearly established precedents if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result.  A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

*Brown v. Payton*,  544 U.S. 133, 125 S.Ct. 1432, 1438-39 (2005) (internal citations omitted).

"Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require awareness of [those] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).  So, when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the applicant as the federal standard, the reviewing court may presume an adjudication on the merits and apply AEDPA deference. *See Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005).

Factual findings made by the state trial and appellate courts are presumed correct, with the applicant having the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Darks v. Mullin*, 327 F.3d 1001, 1007 (10th Cir. 2003).  "[W]hether a state court's decision was unreasonable must be assessed in light of the record [that court] had before it." *Holland v. Jackson*, 542 U.S. 649, 651-52 (2004) (*per curiam*) (citations omitted).

Even if the state court adjudication was contrary to or involved an unreasonable application of clearly established federal law, unless the error is a "structural defect[ ] in the constitution of the trial mechanism, which def[ies] analysis by harmless-error standards," *Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993), the harmless error standard of *Brecht* and *O'Neal v. McAninch*, 513 U.S. 432 (1995), must be applied. *See Herrera v. Lemaster*, 301 F.3d 1192, 1200 (10th Cir. 2002).  Under *Brecht,* habeas relief is not proper unless the error had a "substantial and injurious effect or influence

10

in determining the jury's verdict." *Brecht*, 507 U.S. at 623.  *O'Neal* addresses the situation where

a court is in "grave doubt" about the likely effect of the error on the jury's verdict – that is, where

"the matter is so evenly balanced that [the court] feels [itself] in virtual equipoise as to the

harmlessness of the error."  *O'Neal*, 513 U.S. at 435.  In such a case, *O'Neal* instructs a court to

treat the error "as if it had a substantial and injurious effect or influence in determining the jury's

verdict."  *Id.* (quoting Brecht, 507 U.S. at 623).

### B.    Claim Two.

In the state courts, Applicant raised the issue of whether the prosecutor impermissibly

exercised  peremptory challenges based upon race, and champions the same issue in this Court in his

Application.  By its decision in *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court banned

the use of peremptory challenges by the government to remove prospective jurors based upon their

race.  Under *Batson*, a defendant has the burden to establish a prima facie showing of purposeful

discrimination by establishing that he is a member of a cognizable racial group, that the prosecution

has used peremptory challenges to remove members of that group from the venire, and that "[t]hese

facts and any other relevant circumstances raise an inference that the prosecutor used this practice

to exclude the veniremen from the petit jury on account of their race."  *Id.* at 96.  Once the defendant

has made such a showing, the burden shifts to the State to present a race-neutral explanation for the

challenge, and the trial court then determines whether the defendant has established purposeful

discrimination.  *Id*.  Additionally, the Supreme Court has held that a *Batson*-based equal protection

claim can be asserted even when there is no racial identity between the defendant and the

venirepersons allegedly discriminated against by the prosecutor's use of peremptory challenges.  *See*

*Powers v. Ohio*, 499 U.S. 400 (1991).  This is the exact standard the Colorado Court of Appeals

applied to Applicant's claim that the prosecution utilized its peremptory challenges to exclude minorities from the jury.  *See* Exhibits, Docket #14, Exh. D.  Accordingly, the state court identified the correct governing legal standard.  Additionally in this case, the test was not unreasonably applied because nothing in the record demonstrates that the state appellate court reached a different result based on facts that were materially indistinguishable from a decision of the Supreme Court, nor that it applied the Supreme Court's precedents to the facts in an objectively unreasonable manner.  The court evaluated the totality of the evidence before it, to include the briefing and arguments presented by the parties, and weighed the factors according to the prevailing standard.  Accordingly, review in this Court of Applicant's claim is precluded under the provisions of 28 U.S.C. § 2254(d)(1), and relief cannot be granted based on that statutory provision.

Ultimately, however, "[t]he disposition of a *Batson* claim is a question of fact subjected to the standard enunciated in 28 U.S.C. § 2254(d)(2)."  *Sallahdin v. Gibson*, 275 F.3d 1211, 1225 (10th Cir. 2002).  Applicant claimed in the state courts, as he claims here, that his equal protection rights were violated first because of the prosecution's exclusion of the only remaining black prospective juror, Mr. Smoots, and second, because the prosecutor struck five of seven prospective Hispanic jurors.

With regard to the Applicant's first argument, the state appellate court declined to disturb the trial court's determination that Applicant had made a prima facie showing of systematic exclusion of blacks but that the prosecution had established that race was not the basis for exclusion of the only black person on the venire panel.  The state appellate court based its determination on the fact that the prospective juror had claimed he had only been in court for traffic matters but that in reality, he had a prior felony conviction. Applicant argues that Mr. Smoots, the excluded black person, was singled out for a background check, while other prospective jurors were not, thereby demonstrating

that the prosecution could not provide a race-neutral explanation for its peremptory challenge. However, "[t]he second step of [the *Batson*] process does not demand an explanation that is persuasive, or even plausible." *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995). Rather, "'the issue is the facial validity of the prosecutor's explanation,'" so "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'" *Id.* at 768 (quoting *Hernandez v. New York*, 500 U.S. 352, 360 (1991)). The record demonstrates that under prevailing Supreme Court precedent, the prosecution offered a race-neutral explanation for the peremptory strike of Mr. Smoots for whom a prima facie showing was established.

Applicant's second argument concerning the prosecution's removal of Hispanic jurors also fails to provide a basis for federal habeas review. The trial court ruled that a prima facie case of exclusion based on race had not been demonstrated by the Applicant, and that ruling was upheld on appeal. In *Batson*, the Supreme Court offered two examples of circumstances that may support an inference that the prosecution seeks to exclude a prospective juror on the basis of race: (1) engaging in a "pattern" of strikes against venire members of one race, or (2) questions or statements during voir dire or in exercising challenges that suggests a discriminatory purpose. *See Batson*, 476 U.S. at 97. Applicant's *Batson* claim rests solely on allegations that the prosecution engaged in a discriminatory pattern of strikes against Hispanic venire members. However, the Applicant has not proffered any evidence that could be used to infer that the government's strikes were racially motivated except for the potential juror's race. "[A] showing that a party used its authorized peremptory strikes against jurors of one race does not, standing alone, establish a *prima facie* case of discrimination." *Cent. Ala. Fair Hous. Ctr., Inc. v. Lowder Realty Co.*, 236 F.3d 629, 637 (11th Cir. 2000). Applicant argues that the prosecution struck five of seven Hispanic jurors, but statistical

information can support an inference of discrimination only when placed in context, which the Applicant fails to provide. *See Id*.; *see also United States v. Bergodere*, 40 F.3d 512, 516 (1ˢᵗ Cir. 1994) (a party advancing a *Batson* argument ordinarily should "come forward with facts, not just numbers alone."). Additionally, a Hispanic juror remained on the jury. "[T]he unchallenged presence of jurors of a particular race on a jury substantially weakens the basis for a prima facie case of discrimination in the peremptory striking of jurors of that race." *Id*. at 638. Based upon the record before it, there is nothing to demonstrate that the Colorado Court of Appeals made an unreasonable determination of facts in light of the evidence presented to it in this regard.

Applicant's arguments request an inquiry into the intent of the prosecution. Because the "trial court's findings on the issue of discriminatory intent largely turn on an evaluation of the prosecutor's credibility," *United States v. Sneed*, 34 F.3d 1570, 1579 (10ᵗʰ Cir. 1994), they are factual findings that are presumptively correct under the AEDPA. "[E]valuation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'" *Hernandez*, 500 U.S. at 365 (quoting *Wainwright v. Witt*, 469 U.S. 412, 428 (1985)). Although citing to the state case of *Fields v. People*, 732 P.2d 1145, 1157 (Colo. 1987), the Colorado Supreme Court gave the same deference to the trial judge in this matter as required by United States Supreme Court precedent. *See* EXHIBITS, Docket #14, Exh. D.

The Applicant has not rebutted the factual findings of the state appellate court by clear and convincing evidence. Therefore, the Colorado Court of Appeals' determination that the trial court's decision in this regard was proper is not an unreasonable determination of the facts and § 2254(d)(2) cannot provide a basis for federal court review of this claim. Accordingly, Claim Two of the Application should be denied.

### C.    **Claim Three**.

Applicant's third claim concerns allegations that prosecutorial misconduct violated his Fifth, Sixth, and Fourteenth Amendment rights.  In reviewing this claim, the Court notes that in a document titled "Motion to Exhaust State Remedies Pursuant to 28 U.S.C. § 2254 and Rule 35(c) Colorado Rules of Criminal Procedure," the Applicant asserted prosecutorial misconduct based on the prosecutor's action in (1) using the word "bullshit" in the presence of the jury; (2) telling the court that he wanted to stop the trial based upon a newly received Crime Stopper's tip; (3) withholding exculpatory evidence concerning the victim's stolen vehicle; (4) soliciting false testimony from a police detective about Applicant's statements; (5) making "derogatory remarks and jesters [sic]" to the jury in referring to the Applicant as the murderer; (6) inferring that Applicant's mother was a liar and would continue to lie for her son; (7) referring to pictures of the Applicant with a weapon and then failing to offer the pictures into evidence; and (8) vouching for the credibility of a witness.  *See* EXHIBITS, Docket #14, Exh. V, Appx. A, pp. 2-3.  Essentially, these are the same nonprocedurally barred allegations which the Applicant presents in his Application in this Court.  However, the issue the Applicant presented on appeal to the Colorado Court of Appeals in pursuing his state court remedies was whether the state district court committed error in denying Applicant's postconviction motion without a hearing.  *See id.*, at Exh. U and Exh. W.  Applicant did touch upon the "prejudicial effect" he alleges the misconduct had upon his trial in his appellate briefing, but he fails to set forth any argument which would have alerted the state appellate court to a particularized claim of a violation of his federal constitutional rights such as that he brings in this Court.

In order to allow the state courts the opportunity to act on or correct the constitutional violations the Applicant alleges, the Applicant must do more than just invoke magic words which may

possibly be interpreted to raise a constitutional claim.   Instead, he must provide legal theory explaining how the decisions of the state court violated the particular federal constitutional rights he claims were violated.   *See, e.g., Anderson v. Harliss*, 459 U.S. 4, 7-8 (1982) (claim on direct appeal that jury instruction was reversible error did not fairly present due process challenge to instruction for habeas exhaustion purposes); *Picard v. Connor*, 404 U.S. 270, 276-77 (1971) (holding, in pre-AEDPA case, habeas applicant failed to fairly present federal claim to state court where, despite presenting all necessary facts, applicant failed to assert specific argument that he later tried to raise in federal court); *see, also, Thomas v. Gibson*, 218 F.3d 1213, 1221 n. 6 (10th Cir. 2000) (holding applicant's general state court claim was insufficient to exhaust his later, more specific federal habeas claim).   The record demonstrates that the Applicant failed to do so in his appeal in the state courts and, therefore, this claim is unexhausted.   However, because the claim is without merit, this Court may deny it without regard to the exhaustion issue.   *See Moore v. Schoeman*, 288 F.3d 1231, 1232 (10th Cir. 2002).

The United States Supreme Court has prescribed rules that govern the Applicant's prosecutorial misconduct claim.   Primarily, the Supreme Court has found that in order to be entitled to relief under a claim of prosecutorial misconduct, the misconduct alleged must make the proceedings "so fundamentally unfair as to deny [the applicant] due process."   *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974).   Inquiry into the fundamental fairness of a trial can only be made after examining the entire proceedings.   *Id*. at 643.   This fundamental unfairness test has been determined under federal case law to govern claims brought under the Due Process Clause of the Fourteenth Amendment, *see Duvall v. Reynolds*, 139 F.3d 768, 794 (10th Cir. 1998), and the

16

Sixth Amendment guarantee of a fair trial, *see Cummings v. Evans*, 161 F.3d 610, 618 (10th Cir. 1998).

Allegations of prosecutorial misconduct are mixed questions of law and fact. *See Fero v. Kerby*, 39 F.3d 1462, 1473 (10th Cir. 1994). In performing this function, however, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable. *See Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001 (state court's determination of facts must be objectively unreasonable in light of evidence available to the state court); *Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000) (same standard of unreasonableness applies under subsections § 2254(d)(1) and § 2254(d)(2)). Mere disagreement with the state court's determination, or even erroneous factfinding, is insufficient to grant relief if that court acted reasonably. *Weaver*, 241 F.3d at 1030.

With regard to the Applicant's allegations that commentary made by the prosecutor violated his constitutional rights, the standard to be observed is that "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Young*, 470 U.S. 1, 11 (1985). As the Supreme Court has stated with regard to commentary by counsel, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly*, 416 U.S. at 643). Having reviewed the alleged utterance by the prosecution of the word "bullshit," the

prosecutor's statement to the court about a "crime stoppers" tip, and the alleged "derogatory remarks and jesters [sic]" about the Applicant as a murderer, and then weighing them against the strength of the evidence at trial[4], the Court finds that the Applicant has not established that his trial was rendered fundamentally unfair.  *Compare Spears v. Mullin* 343 F.3d 1215, 1245-47 (10th Cir. 2003) (applicant's trial was not rendered fundamentally unfair by prosecutor's attempts to evoke sympathy for the victim, present victim impact evidence, "dehumanize" the applicant, comment as to the brutality of the crime, and telling jurors they had a moral duty to convict).  Applicant fails to demonstrate that if the statements he complains of had not been made, the outcome of the proceedings would have been any different.  Particularly, he fails to show that the comments were significant enough to influence the jury's decision in light of the evidence of guilt in the record.

In his postconviction motion filed with the state district court, the Applicant argued that the prosecutor withheld exculpatory evidence.  The district court found that the matter should have been raised by pre-trial motion, so that it had been waived, or in the alternative, that it was an allegation that had been made in a previous postconviction motion and was therefore subject to summary dismissal as barred.  *See* EXHIBITS, Docket #14, Exh. V, Appx. B.  The doctrine of procedural bar prohibits a federal court from considering a specific claim, if the claim was denied in the state court on independent and adequate state procedural grounds.  "A state court finding of procedural default is independent if it is separate and distinct from federal law."  *Maes v. Thomas*, 46 F.3d 979, 985 (10th Cir. 1995).  A finding of procedural default is an adequate state ground if it has been applied evenhandedly "in the vast majority of cases."  *Id.*  The procedural bar, as applied to Applicant's claim, was an "adequate" state ground because the Colorado courts consistently decline to review claims

---

[4]*See* EXHIBITS, Docket #14, Exh. A, pp. 4-12 and Exh. B, pp. 2-8.

18

which are contained in a second or successive postconviction motion.  *See Turman v. Buckallew*, 784

P.2d 774, 780 (Colo. 1989) (quoting Colo.R.Crim.P. 35(c)).  Additionally, the bar imposed by the

district court was an "independent" ground because Applicant's failure to comply with state

procedural rules was "the exclusive basis for the state court's holding."  *Maes*, 46 F.3d at 985.

Accordingly, this Court is procedurally barred from considering the Applicant's claim under these

allegations unless he can demonstrate "cause and prejudice" for the default, or demonstrate that a

fundamental miscarriage of justice would result.  *See Coleman*, 501 U.S. at 750.

The cause standard requires an Applicant to "show that some objective factor external to the

defense impeded . . . efforts to comply with the state procedural rules."  *Murray v. Carrier*, 477 U.S.

478, 488 (1986).  Examples of such external factors include discovery of new evidence, a change in

the law, and interference by state officials.  *Id.*  No such factors are contained in the record herein,

nor can they be inferred.  Since the Applicant cannot establish cause, there is no need to examine

whether actual prejudice exists.  As far as whether the Applicant can demonstrate a "fundamental

miscarriage of justice," that issue has been determined against him in Section II above.  Accordingly,

federal habeas review of the Applicant's third claim under this allegation of prosecutorial misconduct

is barred.

As to Applicant's next allegation that the prosecutor solicited false testimony, a conviction

obtained through perjury results in a constitutional violation if the prosecutor knowingly solicits the

false testimony.  *See United States v. Wolny*, 133 F.3d 758, 762 (10th Cir. 1998).  In this regard, the

Applicant must demonstrate: "(1) that the testimony was false, (2) that it was material, and (3) that

it was knowingly and intentionally used by the government to obtain a conviction."  *Id.*  The state

district court found that:

"[T]he record completely fails to support [Applicant's] assertion that Det. Priest falsely testified that the [Applicant] had admitted to him 'that his [finger]prints were all over the stolen vehicle . . . .'  In fact, the contrary is reflected in the record . . .

Q:      When you questioned him after advising him of his rights, did you ever talk to him about whether or not he would expect for you to find fingerprints of his in the red Jeep Cherokee?

Det Priest: I did.

Q:      Can you discuss what he said to you about that.

Det Priest: He stated that the fingerprints should only be in the driver's compartment. He wasn't in any other part of the vehicle.

*See* EXHIBITS, Docket #14, Exh. V, Appx. B.

"[D]eterminations of a factual issue made by a State Court shall be presumed to be correct," unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Factual issues are limited to "basic primary, or historical facts: facts in the sense of a recital of external events and the credibility of their narrators."  *Thompson v. Keohane*, 516 U.S. 99, 110 (1995) (presumption of factual issue determination correctness standard under pre-AEDPA version of § 2254(d), which was revised and is now set forth at § 2254(e)(1)).  Clear and convincing evidence is evidence that is "so clear, direct, weighty and convincing as to enable the jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue."  *United States Fire Ins. Co. v. Royal Ins. Co.*, 759 F.2d 306, 309 (3rd Cir. 1985).  Here, Applicant presents no such evidence to rebut the correctness of the state court's factual findings with regard to the testimony of the officer at trial.  Essentially, what the Applicant desires is for this Court to re-consider and re-weigh the evidence previously presented, and re-determine the credibility of the witness.  That is not the function of a federal habeas court.  The

evidence in the record fails to establish that the testimony in question was false, and therefore, the claim as it is made under these allegations should be denied.

With regard to the Applicant's allegations that the prosecutor inferred to the jury that the Applicant's mother was a liar, it is permissible for the prosecution to comment on such circumstances in terms which cast doubt on a witness' credibility when there are irreconcilable discrepancies between testimony and other evidence in the case. *See, generally, Bland v. Sirmons*, 459 F.3d 999,1025 (10th Cir. 2006). Even an actual reference "to testimony as a lie is not *per se* prosecutorial misconduct." *Id.* The state district court specifically found that the Applicant's mother was the subject of a lengthy examination, and that on direct examination, she was impeached on various issues to include "prior inconsistent statements relating both to the stolen vehicle and a weapon." *See* EXHIBITS, Docket #14, Exh. V,  Appx. B.  Applicant has supplied no facts or facts from which it can be inferred to rebut the presumption of correctness of the factual findings by the state court. Additionally, based upon the evidence of guilt present in the record, an "inference" that Applicant's mother was a liar is unlikely to have tipped the scales in favor of the state at trial, and as such, did not deprive the Applicant of his constitutional rights. *See Fero*, 39 F.3d at 1474 (the courts "look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements *plausibly* could have tipped the scales in favor of the prosecution.").

Applicant has argued that his constitutional rights were violated by prosecutorial misconduct when the prosecutor told the jury about pictures of the Applicant holding and displaying various firearms, but then the photographs were not introduced as evidence during trial.  The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to

produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935).   In connection

with this claim, the state district court made the following findings of fact:

> This portion of the record appears to reflect that during the People's case in chief, the [Applicant's] mother, provided three photographs to the prosecution which depicted the [Applicant] holding a sawed off shotgun in his own bedroom, and in the company of alternate suspect James Buckman.  These photographs were referenced as People's exhibits 82, 83, and 84.   When the prosecutor attempted to introduce these photographs into evidence, the defense objected to one of the photographs upon grounds of 402 and 404.  As it was the prosecution's position that the photographs were relevant in combination, in light of the [Applicant's] objection to one of the proffered photographs, the People withdrew their tender of proposed exhibits 82, 83, and 84.

EXHIBITS, Docket #14, Exh. V, Appx. B.

These factual findings are presumptively correct, and the Applicant has provided no clear and

convincing evidence to the contrary.   Relevant to this Court's review of this matter is that the Tenth

Circuit has directed that when a prosecutor responds to an attack made by defense counsel, the

response is evaluated in light of the defense's argument.   *See Fero*, 39 F.3d at 1474 (quotations

omitted).  Applying this standard, the record demonstrates that the prosecutor's conduct was not in

violation of the Applicant's constitutional rights.   The prosecutor offered the photographs into

evidence on a good faith basis, which is how the jury learned of their existence.  However, when the

defense objected, the photographs were withdrawn based on the trial strategy of the prosecution, i.e.,

that the photographs were relevant in combination.  Nothing in the record demonstrates that this

action by the prosecutor constituted misconduct, because his actions were appropriately responsive

to the defense counsel's objection, nor were his actions significant enough to influence the jury's

ability to judge the evidence which was presented to them in a fair and just manner.

Finally, in his Application, the Applicant alleges that the prosecutor violated his constitutional rights by vouching to the jury that the Applicant said that he had committed a crime. *See* APPLICATION, Docket #3. The allegations are better clarified in the Applicant's motion to the state district court in this regard:

> [The prosecutor inferred] that his witnesses' James Buckman's testimony that the [Applicant] told him that he . . . needed to kill someone so he stalked the victim and killed her for her vehicle was the truth because the statement had come directly from the [Applicant's] mouth and that they heard it come from the [Applicant's] own mouth.

EXHIBITS, Docket #14, Exh. V, Appx A, p. 3.

As a general rule, prosecutors should not personally vouch for the credibility of state witnesses or place their own integrity and credibility in issue. *See United States v. Ainesworth*, 716 F.2d 769, 771 (10th Cir. 1983). "[I]mpermissible vouching occurs only when the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony." *Patton v. Mullin*, 425 F.3d 788, 813 (10th Cir. 2005) (internal quotations omitted). However, "a prosecutor's summation may appropriately suggest to the jury what inferences it ought to draw from the evidence in the case." *United States v. Peña*, 930 F.2d 1486, 1490 (10th Cir 1991).

In this case, the statement made by the prosecutor was made in his closing argument, and the state district court found there to be record evidence and reasonable inferences which supported the comment. *See* EXHIBITS, Docket #14, Exh. V, Appx. B. Applicant argues that because he did not testify at trial, the prosecutor committed misconduct in referencing that the statements came out of Applicant's mouth. The bare fact that the Applicant did not testify at trial does not mean there was

no evidence in the record from which the closing argument could be made, or that the Applicant did not have the opportunity to challenge any such evidence or counter it in his closing argument. The finding of the state district court was based upon the record before it, and there is no evidence to support that the court misunderstood the record or that the record was ignored. *See, e.g., Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003) (where state court plainly misunderstands the record in making its findings, and the confusion goes to a material factual issue that is central to the applicant's claim, that misunderstanding can result in factual finding that is unreasonable). Finally, even if the prosecutor's statements could be considered over the line in favor of vouching, *see United States v. Broomfield*, 201 F.3d 1270, 1276 (10th Cir. 2000) (assuming prosecutor's characterizations and arguments were improper vouching, but deciding that any error was harmless), there is no evidence of substantial unfair prejudice which would warrant habeas relief in this case.

The bottom line in this regard is that prosecutorial misconduct warrants habeas relief only if it so infects the trial process as to make the resulting conviction a denial of due process. *Mayes v. Gibson*, 210 F.3d 1284, 1293 (10th Cir.), *cert. denied*, 531 U.S. 1020 (2000). Applicant has failed to demonstrate that the actions he complains of by the prosecution rise to the level of a constitutional violation, and therefore, his claim must be denied.

### D.     Claim Four.

Under his fourth claim, the Applicant argues that his rights to equal protection and due process were violated by the trial court when it communicated with the jury outside the presence of him and his counsel. The record in this regard reflects that the jury had sent a note out during deliberations, requesting to see pictures of the Applicant displaying the murder weapon. The trial court responded that the pictures were not in evidence.

A defendant "has a due process right to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987).  If, however, a defendant's presence would be "useless" or "the benefit but a shadow," presence is not constitutionally required.  *Id*.  Presence is only required whenever "a fair and just hearing would be thwarted by his absence."  *Id*.  "Thus, a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure."  *Id.*  When there is no indication that the defendant could have done or gained anything had he attended the proceeding, there is no due process violation.  *See United States v. Gagnon*, 470 U.S. 522, 527 (1985) (per curiam).

In this case, the record demonstrates that Applicant's counsel was consulted prior to the trial judge providing a response to the jury question. *See* EXHIBITS, Docket #14, Exh. V, Appdx. B. Applicant presents no indication as to why his presence, in addition to the court's contact with and the participation of his counsel, would have contributed to the fairness of the procedure, or would have been reasonably substantially related "to the fulness of his opportunity to defend against the charge." *Stincer*, 482 U.S. at 745.  He makes no claim that he could have raised any argument before the trial court which could have changed the ultimate response to the jury, thereby distinguishing his situation from those in which the Supreme Court has found presence required.  *See Morrissey v. Brewer*, 408 U.S. 471, 483-84 (1972); *Gagnon v. Scarpelli*, 411 U.S. 778, 781-82 (1973).  Thus, in the circumstances set forth in the record herein, it was not contrary to clearly established federal law as determined by the Supreme Court, for the Colorado Court of Appeals to conclude that no due process violation occurred.

Additionally, the record demonstrates that Applicant's counsel was contacted and participated in the trial judge's decision regarding the response to be given to the jury question presented. *See* EXHIBITS, Docket #14, Exh. V, Appdx. B. Applicant has provided no evidence to the contrary. Accordingly, the Applicant has failed to meet his burden of demonstrating that the decision of the state appellate court was based on an unreasonable determination of facts in light of the evidence presented. Therefore, federal habeas relief on this claim is not warranted.

### E.   Claim Six.

In his sixth claim, the Applicant alleges that based upon an unlawful stop, search and seizure, his conviction and sentence were obtained in violation of his Fifth, Sixth, and Fourteenth Amendment rights. However, it is the Fourth Amendment which prohibits "unreasonable searches and seizures" by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *See Terry v. Ohio*, 392 U.S. 1, 9 (1968); *United States v. Cortez*, 449 U.S. 411, 417 (1981). As pointed out by the Respondents, the Applicant raised his claim in this regard in the state courts under Fourth Amendment precedent. *See* EXHIBITS, Docket #14, Exh. A, pp. 27-30. If the Applicant truly wishes to raise the allegations as Fifth, Sixth, and Fourteenth Amendment violations, then the claim is unexhausted and should be dismissed.

As Applicant's allegations relate to a Fourth Amendment violation, federal habeas review of Fourth Amendment claims is governed by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone*, the Court stated:

> [W]here the State has provided an opportunity for full and fair litigation of the Fourth Amendment Claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Id*. at 494.

The Court of Appeals for the Tenth Circuit has noted that "[a]lthough *Stone* announced a verbal standard, it failed to clothe the words 'opportunity for full and fair litigation' with any precise meaning." *Gamble v. State*, 583 F.2d 1161, 1165 (10th Cir. 1978). Therefore, the Tenth Circuit has constructed the following definition:

> "Opportunity for full and fair consideration" includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim. It also includes the full and fair evidentiary hearing contemplated by *Townsend* [*v. Sain*, 372 U.S. 293 (1963)]. Furthermore, it contemplates recognition and at least colorable application of the correct Fourth Amendment constitutional standards. Thus a federal court is not precluded from considering Fourth Amendment claims in habeas corpus proceedings where the state court wilfully refuses to apply the correct and controlling constitutional standards. Deference to state court consideration of Fourth Amendment claims does not require federal blindness to a state court's wilful refusal to apply the appropriate constitutional standard.

*Gamble*, 583 F.2d at 1165.

The Tenth Circuit has gone on to clarify that "'[o]pportunity' includes procedural opportunity to raise a claim, and it includes a full and fair hearing." *Sanders v. Oliver*, 611 F.2d 804, 808 (10th Cir. 1979).

As argued by the Respondents with regard to this claim, as substantiated by the record, and as undisputed between the parties, the Applicant did file a motion to suppress and did receive a hearing on the allegations raised in that motion. *See* EXHIBITS, Docket #14, Exh. A, pp. 27-30 and Exh. B, p. 25. Accordingly, the record demonstrates that the procedural opportunity to raise or otherwise present a Fourth Amendment claim was clearly afforded to the Applicant.

While the Colorado state courts looked to state case law in making their decision on the Applicant's allegations, the rulings in the state cases which were cited are solidly based in Fourth

Amendment precedent announced by the United States Supreme Court. Under this precedent, the state appellate court went on to determine that based on the record before it, no constitutional concern was present. Applicant has failed to provide any well-pled facts or facts from which it can be inferred to demonstrate that the court failed to recognize or wilfully refused to apply the correct and controlling constitutional standards in this regard, and no such evidence is apparent from the record. Applicant merely disagrees with the result, and wants this Court to reconsider the issue *de novo*. That is not the function of this Court or an appropriate review to be undertaken in a federal habeas action. Accordingly, Applicant is not entitled to federal habeas review of his Fourth Amendment claim, and it must be dismissed.

### F.     Claim Seven.

Applicant argues, under the seventh claim to his Application, that hearsay statements made by a police witness at trial violated Applicant's rights under the Fifth, Sixth, and Fourteenth Amendments of the federal constitution. However, as discussed previously in Section II above, the Applicant's claim as far as it concerns allegations of a violation of his right to confrontation and right to be presumed innocent are procedurally barred from review in this Court. Accordingly, the claim remaining for consideration herein is Applicant's claim that his right to remain silent was violated when a police officer witness testified at trial that after confronting the Applicant with inconsistencies in a statement the Applicant was giving to the officer, the Applicant quit talking and asked for a lawyer. The record is unclear as to whether the Applicant invoked his right in this regard pre-arrest or post-arrest. The lack of information in this regard does not need further investigation, however, because in either instance, the Applicant is not entitled to relief on this claim.

The Supreme Court has held that use of a defendant's pre-arrest silence for impeachment purposes does not violate the Fifth Amendment right against self-incrimination or the Fourteenth Amendment right to due process. *See Jenkins v. Anderson*, 447 U.S. 231, 238-39 (1980). In *Jenkins*, however, the Court specifically declined to address whether pre-arrest silence may implicate Fifth Amendment concerns in other circumstances. *Id.* at 236 n. 2. While the Court of Appeals for the Tenth Circuit has determined that pre-arrest silence may merit Fifth Amendment protection, *see United States v. Burson*, 952 F.2d 1196, 1201 (10th Cir. 1991), Section 2254(d)'s deferential standard does not allow for habeas relief in the absence of Supreme Court precedent. The Applicant has provided no citation to any such precedent, and none is apparent upon research into the issue. The lack of a Supreme Court decision regarding whether the prosecution may introduce evidence of a defendant's pre-arrest silence during its case in chief precludes federal habeas relief in this matter.

In addition, there is a distinction between post-arrest silence and post-*Miranda* silence. Comments made about a defendant's silence after arrest, but before *Miranda* warnings were given, may be proper. *See Brecht v. Abrahamson*, 507 U.S. 619, 628-29 (1993). In this case, the record does not disclose when the Applicant received a *Miranda* warning. However, even if the Applicant had received a *Miranda* warning before he invoked his right to silence, the officer's statement at trial was harmless.

Applicant raised this issue in the direct appeal of his judgment of conviction. The proper standard for harmless error for state courts considering constitutional errors on direct appeal is that set forth in *Chapman v. California*, 386 U.S. 18, 24 (1967), which is harmless beyond a reasonable doubt. *See Hale v. Gibson*, 227 F.3d 1298, 1324 (10th Cir. 2000) (citing *Chapman*, 386 U.S. at 24). If this standard is applied by the state courts, then federal habeas review is under the AEDPA

standard, which is whether there was an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d); *Hale*, 227 F.3d at 1324.   If the state courts do not properly apply *Chapman*, the pre-AEDPA standard from *Brecht* is applied.  *See Hale*, 227 F.3d at 1324.

In this case, the Colorado Court of Appeals reviewed the issue under a reversible error standard.  *See* EXHIBITS, Docket #14, Exh. D, p. 8.  Reversible error is substantial error, which warrants reversal of a judgment.  BLACK'S LAW DICTIONARY 543 (6th ed. 1990).  This is essentially a *per se* standard, meaning that just by virtue of the error happening, reversal is appropriate. Violation of a criminal defendant's constitutional rights, however, is not *per se* reversible error; instead, the prosecution must demonstrate that the error was harmless beyond a reasonable doubt. *See Chapman*, 386 U.S. at 826-27.  Because the Colorado Court of Appeals did not apply *Chapman*, this Court applies the *Brecht* standard of whether "a substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 637.

As noted by the Applicant in his direct appeal of this issue:

At trial, the following took place during the re-direct examination of Detective Priest:

> Q      . . . Regarding to [sic] the question about the Defendant stating he was nervous - - at which point in time, in your communications with him, did he state he was nervous.
>
> A      This was <u>just</u> <u>before</u> <u>he</u> <u>didn't</u> <u>want</u> <u>to</u> <u>talk</u> <u>anymore</u>.

EXHIBITS, Docket #14, Exh. A, p. 26 (emphasis in original).

The context of the response at issue would not naturally or necessarily lead a jury to conclude that it was a comment on Applicant's constitutional right to remain silent.  However, even assuming such a conclusion, the impact on the jury was negligible because the response was brief, and as found by the state appellate court:

> The jury's attention was not directed to the [Applicant's] silence, and it was not used as a means of implying guilt. The comment was not pursued in any fashion and the prosecutor did not comment on it. Moreover, the [Applicant] declined the trial court's offer to instruct the jury regarding the comment.

EXHIBITS, Docket #14, Exh. D, p. 8.

Applicant presents no such evidence to rebut the correctness of the state court's factual findings in this regard. Applicant has therefore failed to demonstrate that the single, isolated and negligible reference to his silence had any effect, let alone a substantial and injurious effect or influence, on the jury's verdict. Accordingly, the Applicant is not entitled to habeas corpus relief on this claim, and it should be dismissed.

### G.   Claim Eight.

In his final claim, the Applicant alleges that his Fifth, Sixth, and Fourteenth Amendment rights were violated because the summaries of the Court of Appeal's decisions are contrary to federal law. The record demonstrates that the Applicant raised the issue of contrariness in a Motion to Exhaust State Remedies Pursuant to 28 U.S.C. § 2254 and Rule 35(c) Colorado Rules of Criminal Procedure. *See* EXHIBITS, Docket #14, Exh. V, Appx. A, p. 3. As presented to the Colorado Court of Appeals, however, the issue on appeal was framed as error by the state district court in denying Applicant's postconviction motion which contained his claim of contrariness to federal law, without a hearing. *See id.*, at Exh. U and Exh. W. Accordingly, the constitutional claim the Applicant seeks to bring in this Court has not been fairly presented to the state courts. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (to give the state courts one full opportunity to resolve any issues, "the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."). Further, any

error under state law in the refusal to provide him with an evidentiary hearing provides no basis for federal habeas relief, because errors of state law do not provide grounds for federal habeas relief. *See Estelle*, 502 U.S. at 67-68. Applicant's briefing in the state appeal does make reference to federal constitutional violations with regard to the substantive claims upon which the Applicant did not receive an evidentiary hearing, i.e., ineffective assistance of postconviction counsel, prosecutorial misconduct, etc. With regard to those substantive claims which have been properly exhausted in the state courts, they have been reviewed under separate claims in this action, as demonstrated by the analysis in the sections set forth above. The procedural bar which precludes this Court's review of other claims, however, cannot be overcome by just broadly claiming that the decisions of the state courts with regard to those claims are contrary to federal law. The procedural bar remains intact, and this Court is precluded from review of those claims.

In order to allow the state courts the opportunity to act on or correct the constitutional violations the Applicant alleges, the Applicant must do more than just invoke the magic words "fair trial," or "due process," or make only cursory citation to the appropriate constitutional amendments. He must provide legal theory explaining how the decisions of the state appellate court violated the particular federal constitutional rights he cites. *See, e.g., Anderson*, 459 U.S. at 7-8 (1982); *Picard*, 404 U.S. at 276-77; *see also Thomas*, 218 F.3d at 1221 n. 6. Applicant failed to do so in his appeal to the state courts because he explicitly only challenged the denial of an evidentiary hearing. Therefore, this claim is unexhausted. However, because the claim is without merit, this Court may deny it without regard to the exhaustion issue. *See Moore*, 288 F.3d at 1232.

The record demonstrates in this regard that the evidentiary hearing in question was denied based on a finding that the Applicant's postconviction motion was successive, that the claims had

been previously raised and resolved against him, that the motion contained claims that could and should have been raised in prior proceedings, the motion failed to allege specific factual allegations, and the motion failed to state a claim upon which postconviction relief could be granted.  *See* EXHIBITS, Docket #14, Exh. V, Appx. B.  Under Colorado law, Colorado Criminal Procedure Rule 35(c) "affords every person convicted of a crime the right to seek postconviction review upon the grounds that the conviction was obtained in violation of the Constitution or laws of the United States or the constitution or laws of this state." *Robbins v. People*, 107 P.3d 384, 387 (Colo. 2005) (citing *People v. Hubbard*, 519 P.2d 945, 947 (Colo. 1974)).  The rule is not without limitations, and specifically provides that grounds relied upon by the trial court in dismissing the motion are appropriate.  *See* Colo.R.Crim.P. 35(c)(3)(VI)&(VII).

The Supreme Court has stated that a procedural limitation "is not subject to proscription under the Due Process Clause unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Medina v. California*, 505 U.S. 437, 445 (1992) (quoting *Patterson v. New York*, 432 U.S. 197, 201-02 (1977)) (citations and internal quotation marks omitted).  While the Supreme Court has acknowledged that a state prisoner's right to petition for postconviction relief has become a central prerogative as years have passed, it has also recognized that restrictions on successive petitions fall within legislative and judicial powers in order to limit abuses.  *See generally Felker v. Turpin*, 518 U.S. 651, 663-64 (1996) (discussing federal restrictions on the writ of habeas corpus to avoid abuses of the writ).  Accordingly, the restrictions provided by Colorado law and applied by the state district court were within appropriate authority and do not provide the basis for a federal constitutional violation.

As far as Applicant's claim may be construed as seeking federal habeas relief under the notion that he is in custody not based upon a federal constitutional violation, but instead, in violation of the laws of the United States because the decisions and/or rulings of the Colorado Court of Appeals were contrary to federal case law, the claim also fails. Under the instances of equal protection and due process violations alleged by the Applicant in this claim, he fails to identify that the Colorado Court of Appeals applied a rule that contradicts the governing law set forth in Supreme Court cases. Applicant attempts to argue the substance of procedurally barred claims, and re-argue the merits of exhausted claims, in this regard. However, the issue presented and therefore reviewed by the Colorado Court of Appeals was the Applicant's entitlement to a hearing. *See* EXHIBITS, Docket #14, Exh. X. Additionally, nothing in the record demonstrates that the state appellate court reached a different result based on facts that were materially indistinguishable from a decision of the Supreme Court, nor did it apply the Court's precedents to the facts in an objectively unreasonable manner. Applicant fails to identify any decision of the United States Supreme Court which hold that the Fifth, Sixth, or Fourteenth Amendments to the United States Constitution would be violated under the facts which were present in this case. Accordingly, the state court's decision was not contrary to federal law or legally unreasonable, and habeas relief is unavailable to the Applicant on this claim.

## IV.    Conclusion.

In viewing the merits of the Applicant's claims, Applicant is not entitled to relief in this Court under 28 U.S.C. § 2254. Pursuant to Rule 8 of the rules governing section 2254 proceedings, no evidentiary hearing is required.

Based upon the foregoing analysis, and the entire record herein, I hereby **recommend** that the Application [Docket #3] be **denied**, and that this case be dismissed with prejudice.

Dated at Denver, Colorado, this 4th day of April, 2007.

BY THE COURT:

 s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge